IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LETICIA CHEROMIAH,

     Plaintiff,

v.                                                                          Civ. No. 15-00051 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

**THIS MATTER** is before the Court on Plaintiff Leticia Cheromiah's Motion to Reverse

and Remand the Social Security Commissioner's final decision denying Plaintiff disability

insurance benefits. ECF No. 19.  Because the hypothetical the Administrative Law Judge

("ALJ") posed to the Vocational Expert ("VE") did not consider all of Plaintiff's mental

limitations, the Court will GRANT Plaintiff's motion and remand this action to the

Commissioner for further proceedings consistent with this opinion.

### I.      BACKGROUND

#### A. Medical History

Plaintiff is a fifty-four year old woman who filed an application for disability insurance

benefits claiming that she was unable to work due to depression, asthma, anxiety, fibromyalgia,

carpal tunnel, back pain, and stomach problems. Administrative Record (AR) 87.   Plaintiff's

medical records reflect that in 2008, she made numerous reports to Dr. Valerie Carrejo of

abdominal pain, bloating, nausea, and diarrhea. AR 441-44, 446, 452-53. Plaintiff further

complained of back pain and depression. AR 442.  In October 2008, Plaintiff reported "severe"

abdominal pain and breathing complications due to asthma. AR 562. Dr. Carrejo recommended

massages, exercising, and stretches for Plaintiff's back pain. Dr. Carrejo, however, was unable to

determine the cause of Plaintiff's abdominal pain.  Records from Plaintiff's multiple visits to the

emergency room in 2008 reveal that Plaintiff was diagnosed with an ovarian cyst, small hiatal

hernia, and irritable bowel syndrome.  AR 348, 350, 436.

       In February 2009, Plaintiff continued reporting to Dr. Carrejo that she was experiencing

stomach and back pain, heartburn, nausea, and depression. AR 496.  Dr. Carrejo was still unable

to determine the cause of Plaintiff's stomach pain but increased Plaintiff's medication for

depression. AR 496.  Plaintiff made further reports of abdominal pain and bloating in March and

April 2009. AR 548, 550.  A gastroenterology clinic at the University of New Mexico Hospital

diagnosed Plaintiff with esophagitis. AR 394.  In December 2009, Plaintiff reported to Dr.

Carrejo that her back pain occasionally becomes severe and radiates to her left leg.  AR 533.

Plaintiff also reported numbness in both hands due to carpel tunnel syndrome. AR 533. Dr.

Carrejo indicated that Plaintiff's back pain was due to a ruptured disc and referred Plaintiff to a

specialist. AR 533. Dr. Carrejo further gave Plaintiff braces for her wrists to help her carpel

tunnel syndrome. AR 533.

       In January 2010, Plaintiff continued to report abdominal and back pain. AR 531. She

reported her pain to be at nine on a ten point scale. AR 531. Dr. Carrejo's notes indicate that

Plaintiff was taking Percocet for her back pain and was awaiting an appointment with a

specialist. AR 531.  The following month, Plaintiff reported continued back pain and that her

medications were not working. Dr. Carrejo administered trigger point injections. AR 528.

Plaintiff made additional complaints of back pain, chest pain, and difficulty breathing in March

2009. AR 526. In April 2009, she reported full body pain, fatigue, and increasing anxiety. AR

524.  Dr. Carrejo conducted tests which Dr. Carrejo believed indicated that Plaintiff was

suffering from fibromyalgia. AR 524. Plaintiff's reports of pain continued throughout May, July,

and September. AR 518, 521, 665.  In August 2010, Plaintiff was diagnosed with sciatica. AR

845-48. Dr. Carrejo referred Plaintiff to a physical therapist. In October 2010, Plaintiff reported

to Dr. Carrejo that her back pain was becoming worse and that her abdominal pain was severe.

AR 664. Plaintiff reported that she was depressed and experiencing fatigue, left arm weakness,

shortness of breath, dizziness, headaches, and blurry vision. AR 664. In a follow-up appointment

in November, Plaintiff continued to report depression and agreed to begin taking medication and

attend counseling. AR 663. One month later, Plaintiff reported she was no longer taking

medication. AR 662.

     In early 2011, Plaintiff continued to report chronic pain and depression. AR 660.

Plaintiff also reported intermittent weakness and attributed her chronic pain to her fibromyalgia.

AR 659. In September 2011, Plaintiff reported chronic pain and that her medication was causing

her anxiety. AR 784. Dr. Carrejo noted in October 2011, that the cause of Plaintiff's chronic pain

was unclear.  While Dr. Carrejo believed the cause could be fibromyalgia, Dr. Carrejo also noted

that Plaintiff's depression was strongly related to her pain complaints. AR 783. Dr. Carrejo

referred Plaintiff to a rheumatologist, which confirmed that Plaintiff suffered from fibromyalgia.

AR 782, 908-11.

     Plaintiff was also examined by consultative psychologist Finian Murphy, Ed.D in early

2011. AR 585. Dr. Murphy remarked that Plaintiff's mood during the evaluation was depressed

and her affect anxious. AR 587. Dr. Murphy indicated that Plaintiff's intelligence was average.

AR 588. Dr. Murphy diagnosed Plaintiff with severe PTSD and major depression with paranoid

ideations and accorded Plaintiff a Global Assessment of Functioning (GAF) score of 33. AR 585.

While Dr. Murphy concluded that Plaintiff's ability to understand instructions was within normal ranges, he concluded that Plaintiff's ability to "carry out instructions, to concentrate and to persist at tasks is markedly limited by her psychological problems." AR 585.

Dr. Daniel Cox, Ph.D., a non-examining consultative psychologist, also reviewed Plaintiff's records. AR 590. Dr. Cox found Plaintiff moderately limited in her ability to maintain attention and concentration for extended periods and her ability to sustain an ordinary routine without special supervision. Dr. Cox further found Plaintiff moderately limited in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods and her ability to set realistic goals or make plans independently of others. AR 604-05. Finally, Dr. Cox found Plaintiff markedly limited in her ability to understand and remember detailed instructions and her ability to carry out detailed instructions. AR 604. In his functional capacity assessment, Dr. Cox only noted that Plaintiff "can understand, remember and carry out simple instructions." AR 606.

In visits with Dr. Carrejo in March through June of 2012, Plaintiff continued reporting abdominal pain, back pain, anxiety, and chronic fatigue. AR 778-780.  In August 2012, Plaintiff reported depression and chronic pain. AR 775. At this visit, Dr. Carrejo noted that Plaintiff was newly diagnosed with diabetes. AR 775.

**B.  Procedural History**

Plaintiff filed her application for disability insurance benefits and supplemental security income on July 30, 2010. AR 172, 178. Plaintiff alleged a disability start date of January 1, 2007. AR 172, 178.  After Plaintiff's claim was denied at the initial levels, Plaintiff's case was set for a hearing on October 11, 2012, in front of Administrative Law Judge (ALJ) Frederick Upshall.

4

AR 26. On May 22, 2013, the ALJ issued his decision finding Plaintiff not disabled.  AR 42.

This appeal followed.

## II.    APPLICABLE LAW

### A.  Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance

benefits if that individual is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step

sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R.

§ 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A

claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B.  Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007,

6

1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III.    ANALYSIS

Plaintiff challenges the ALJ's decision on a number of fronts. Plaintiff first argues that the ALJ's RFC is incomplete, conclusory, and unsupported by substantial evidence. ECF No. 21 at 4. As a subset of this argument Plaintiff argues that RFC improperly relies on a faulty credibility finding by the ALJ. ECF No. 21 at 4. Second, Plaintiff argues that due to the incomplete RFC, the ALJ's adoption of the vocational expert's testimony at step five was error. ECF No. 21 at 4. Plaintiff additionally argues on this point that the ALJ did not properly include all the limitations noted in the RFC in his hypothetical to the vocational expert.  ECF No. 21 at 4. Finally, Plaintiff argues that the Appeals Council erred in refusing to admit and consider additional material evidence regarding the disabling effects of Plaintiff's impairments.  ECF No. 21 at 4.  Because the Court agrees with Plaintiff that the ALJ's hypotheticals to the vocational expert did not properly encapsulate Plaintiff's limitations, the Court will grant Plaintiff's motion without addressing her remaining arguments.

In his RFC, the ALJ found that Plaintiff has the capacity to

Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: she can never climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs. She can occasionally stoop, crouch, kneel, and crawl. She is limited to occasional handling and fingering bilaterally. She must avoid all exposure to environmental irritants such as fumes, odors, dusts and gases; avoid all exposure to poorly ventilated areas and all exposure to chemicals.

> Additionally, the claimant is limited to simple unskilled work with only occasional, incidental interaction with the public.

AR 31. The ALJ's finding that Plaintiff is limited to "simple unskilled work" is important to the issue before the Court, Plaintiff argues, because in his hypothetical to the vocational expert, the ALJ omitted reference to "simple" work and only inquired as to light, unskilled work. AR 78-79. Plaintiff contends that this omission constitutes reversible error. ECF No. 28 at 12. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." (internal quotation marks and citation omitted)); *Bainbridge v. Colvin*, Civ. No. 14-1409, 2015 WL 4081204, *5 (10th Cir. July 7, 2015 (unpublished) ("If a hypothetical question does not precisely relate all of a claimant's impairments, the testimony it elicits cannot be considered substantial evidence in support of an ALJ's decision.").

In contrast, Defendant contends that even assuming the omission of "simple work" from the hypothetical constitutes error, the error is harmless. ECF No. 28 at 12. *See Id.* at *6 (concluding that the omission of certain limitations from the hypotheticals posed to the vocational expert constituted harmless error). Defendant's argument on this point is that the omission of the word "simple" is inconsequential and that the ALJ's limitation to unskilled work in the hypothetical encompassed any limitation to simple work. ECF No. 28 12-13.

The Court agrees with Defendant that the word "simple" cannot bear the weight Plaintiff attempts to place on it. The hypothetical the ALJ posed to the VE limited

8

Plaintiff to "unskilled work."  Plaintiff has not demonstrated, and the Court is not convinced, that the phrase "simple, unskilled work" is meaningfully different from the phrase "unskilled work".  Nonetheless, the Court does agree with Plaintiff's larger point: the hypothetical the ALJ posed to the VE did not adequately incorporate Plaintiff's mental limitations.  As a result, this case must be remanded.

In *Chapo v. Astrue*, the Tenth Circuit concluded that a hypothetical to the vocational expert was "fatally defective" due, in part, to the ALJ's failure to include its own finding that the claimant be restricted to "simple, unskilled work at best." 682 F.3d 1285, 1287, 1290 n.3, 1292 (10th Cir. 2012).  The Tenth Circuit explained that a hypothetical is sufficient if it contains all of the limitations found to exist by the ALJ but that the failure of an ALJ to include his or her own findings regarding the claimant's mental restrictions renders the hypothetical invalid. *Id.* at 1290-92.  Like the ALJ in *Chapo*, the ALJ here failed to incorporate mental limitations he found into the hypothetical posed to the VE.

It is undisputed in this case that Plaintiff has moderate to marked mental limitations.  For instance, the ALJ gave "some weight" to Dr. Murphy's opinions, specifically his findings that Plaintiff's ability to carry out instructions and to concentrate and persist at tasks is markedly limited by her psychological problems. AR 39, 585. In addition, the ALJ determined that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties" and noted that Dr. Murphy found her ability to carry

out instructions, concentrate and persist at tasks to be markedly limited. AR 29.[1]

Similarly, Dr. Cox found Plaintiff markedly limited in her ability to understand and

remember detailed instructions and her ability to carry out detailed instructions, in

addition to other moderate limitations such as Plaintiff's ability to complete a normal

workday without interruption from psychologically based symptoms. AR 604. Dr. Cox

therefore opined that Plaintiff is limited to carrying out simple instructions. AR 606.  The

ALJ noted that Dr. Cox (who he referred to as a state agency psychological consultant

rather than by name) found Plaintiff to have "moderate difficulties in maintaining

concentration persistence and pace." AR 39 (citing report of Dr. Cox).  The ALJ further

noted that he concurred with the opinion of Dr. Cox.[2] AR 39.   The omission of these

mental restrictions from the hypothetical posed to the vocational expert rendered the

hypothetical defective.

Defendant attempts to save the case from remand by pointing out that in two

unpublished post-*Chapo* decisions, the Tenth Circuit found that a limitation to "unskilled

work" may encompass some mental limitations.  *See Jaramillo v. Colvin*, 576 Fed.

App'x. 870 (10th Cir. 2014) (unpublished); *Hernandez v. Colvin*, 567 Fed. App'x. 576

(10th Cir. 2014) (unpublished).  Both of these cases, however, undermine rather than

support Defendant's argument.

---

[1] Although at this point in the decision the ALJ was addressing Plaintiff's mental impairments in an effort to determine whether "paragraph B" criteria are satisfied rather than as part of an RFC assessment, the ALJ's findings with regard to Plaintiff's mental health in this section are still relevant.
[2] The ALJ did not specifically cite to portions of Dr. Cox's report that found marked limitations and so it is unclear whether the ALJ also concurred with those opinions.  If the ALJ disregarded those opinions without explanation, however, this constitutes error. *See Confere v. Astrue*, 235 Fed. App'x. 701, (10th Cir. 2007) (unpublished) (reversing and remanding where the ALJ failed to provide reasons for disregarding limitations found by the consultative psychiatrists).

In *Jaramillo*, the Tenth Circuit considered the various mental health limitations three doctors attributed to a claimant.  The first doctor, Dr. Louis Wyne, opined that the claimant had no more than a mild limitation in his ability to concentrate and persist at simple work tasks. *Jaramillo*, 576 F. App'x at 872, 875.  The second doctor, Dr. Scott Walker, found that the claimant could understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.[3] *Id*. at 873. The third doctor, Dr. Charles Mellon, determined the claimant "moderately limited in his ability to (1) carry out instructions, (2) attend and concentrate, and (3) work without supervision." *Id*. at 872.  To determine whether these mental limitations were incorporated into the definition of unskilled work, the Tenth Circuit looked to Social Security Ruling ("SSR") 85-15 which the Tenth Circuit found to be "useful for its discussion of the mental requirements for unskilled work." *Id*. at 877 n.6. SSR 85-15 states, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*. at 875 (citing SSR 85–15, 1985 WL 56857, at *4 (1985)).  The Tenth Circuit also looked to the Social Security Administration's Program Operations Manual System

---

[3] Dr. Walker also found the claimant to be moderately limited with regard to nine mental activities. *Jaramillo*, 576 Fed.Appx. at 872-73.  The Tenth Circuit, however, upheld the ALJ's decision not to credit these findings and so they are irrelevant to the analysis of what the ALJ properly presented to the VE. *See Id*. at 874 (limiting consideration of Dr. Walker's opinion).

(POMS) "which states that any job, including unskilled work, requires '[t]he ability to maintain concentration and attention for extended periods (the approximately 2–hour segments between arrival and first break, lunch, second break, and departure),' and . . . which lists the ability to 'maintain attention for extended periods of 2–hour segments (concentration is not critical)' among 'Mental Abilities Critical For Performing Unskilled Work.'" *Id*. at 875–76. (citing POMS DI 25020.010 B.2.a and POMS DI 25020.010 B.3.d.).

Given that the mental limitations stated by the first two doctors were encompassed by the mental limitations contained in the descriptions of unskilled work, the court found that the distinction between skill level and mental functions recognized in *Chapo* did not apply with respect to the mental limitations found by doctors Wyne and Walker. *Id*. at 876.  With regard to Dr. Mellon, however, the court found the distinction to be relevant. *Id*. This is because "[n]one of the basic mental abilities of unskilled work described in SSR 85–15 captures any of the three *moderate* limitations Dr. Mellon found (carry out instructions, attend and concentrate, and work without supervision), nor do the additional limitations to simple, routine, and repetitive tasks." *Id*. at 876.  Thus, the court held, these limitations "must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding." *Id*. at 876.  Because "[t]he limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments Dr. Mellon found . . . the ALJ's reliance on the jobs the VE identified in response to the hypothetical was not supported by substantial evidence." *Id*. at 876.

The mental limitations at issue in this case are similar to those Dr. Mellon found

and unlike those doctors Wyne and Walker found.  Similar to the mental limitations Dr.

Mellon found in *Jaramillo,* Dr. Cox here found the claimant to be markedly limited in her

ability to understand and remember detailed instructions and moderately limited in her

ability to complete a normal workday without interruption from psychologically based

symptoms. AR 604.  Further, Dr. Murphy concluded that Plaintiff's ability to carry out

instructions, to concentrate and to persist at tasks is markedly limited by her

psychological problems. AR 585.  Accordingly, consistent with what the Tenth Circuit

found in *Jaramillo*, I find that the ALJ's reliance on the jobs the VE identified in

response to the hypothetical was not supported by substantial evidence.[4]

       *Hernandez*, the other case Defendant relies on, is consistent with *Jaramillo*'s

teaching that, in determining whether a limitation to unskilled work adequately accounts

for a particular mental health limitation, a court should consider whether a distinction

exists between the mental health limitation at issue and the mental requirement necessary

for unskilled work. *See Jaramillo*, 576 Fed.Appx at 876.  The only mental health

limitation at issue in *Hernandez* was the plaintiff's learning disorder.  *Hernandez*, 567

Fed.Appx. at 582.  Given that a limitation to unskilled work accommodates a plaintiff's

inability to learn skills, the Tenth Circuit determined that the case presented a

circumstance in which a particular mental limitation was obviously accommodated by a

reduction in the skill level. *Id*. at 582-83.  Nonetheless, the court made sure to

------

[4] Plaintiff could have also challenged the ALJ's decision on the basis that the ALJ failed to incorporate her mental limitations into his RFC.  Regardless of whether the limitations were in the RFC, however, the ALJ erred in not providing them to the VE. *See Jaramillo*, 576 Fed.Appx. at 877 ("the passage from SSR 85–15 that the Commissioner relies on does not justify omitting moderate limitations from an RFC finding or from the dispositive hypothetical to a VE.").

acknowledge that in other cases "a limitation to 'unskilled' work may be too broad to account for all the limitations where an ALJ makes specific findings regarding a claimant's mental impairments." *Id*. at 583.  For the reasons stated above, the instant case is not like *Hernandez* but, rather, one in which a limitation to unskilled work is too broad to account for all the limitations regarding Plaintiff's mental impairments.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand (ECF NO. 21) is GRANTED. The Social Security Commissioner's denial of Plaintiff's claim for disability benefits is reversed and the case is remanded for further proceedings consistent with this opinion.

UNITED STATES MAGISTRATE JUDGE
Sitting by Consent